UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TRAVIS DAVIS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MATT HASSEL and HOLCOMB,<br><br>　　　　　Defendants. | CAUSE NO. 3:19-CV-621-PPS-MGG |

OPINION AND ORDER

Travis Davis, a prisoner without a lawyer, is proceeding in this case "on a Fourteenth Amendment claim for money damages against Sheriff Hassel and Sergeant Holcomb for subjecting him to overcrowded conditions on July 17, 2019[.]" ECF 10 at 2. Specifically, Davis alleged in his complaint that, while he was housed in Marshall County Jail as a pretrial detainee, Sheriff Matt Hassell authorized Sergeant Bo Holcomb to place a fifth inmate in the four-person cells, which made it "impossible" for Davis to leave his bed and forced him to eat on his toilet instead of a table. ECF 1 at 2. On April 21, 2021, the defendants moved for summary judgment. ECF 25. With the motion, the defendants provided Davis the notice required by N.D. Ind. L.R. 56-1(f). ECF 27. Attached to the notice were copies of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1.

Pursuant to Local Rule 56-1(b)(1), "[a] party opposing [a summary judgment] motion must, within 28 days after the movant serves the motion, file and serve (A) a response brief; and (B) any materials that the party contends raise a genuine dispute."

After the time to respond expired, I granted Davis until August 4, 2021, to file a response to the summary judgment motion. ECF 30. I cautioned Davis that, if he did not respond by that date, the summary judgment motion may be considered without his response. *Id.* The deadline passed several weeks ago, but Davis has not responded. Therefore I will now rule on the defendants' summary judgment motion.

I.    FACTS

The defendants submit affidavits, attesting to the following information.[1]

Overcrowding at Marshall County Jail

The Marshall County Jail was constructed in 2008 and has 230 permanent beds. ECF 26-1 at 1. Starting in 2018, Marshall County Jail's average daily population began to rise sharply, raising concerns about potential overcrowding. *Id.* at 2. Sheriff Hassell alerted and met with various county officials to discuss potential remedies to bring the jail population down. *Id.* Beginning in late 2018, Sheriff Hassell and county officials discussed and implemented various remedies to reduce the jail population, including: (1) making arrangements to transfer inmates to a different county; (2) expediting the implementation of Criminal Rule 26 for assessment and release of pretrial detainees; (3) reducing sentences of currently incarcerated county inmates; (4) adding additional deputy prosecutors; (5) adding a fourth court to the County; and (6) constructing an addition to the Marshall County Jail which would house an additional 300 inmates. *Id.*

---

[1] Because Davis did not respond to the summary judgment motion, I accept the facts alleged in the defendants' affidavits as undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .")

at 2, 5. Many of these options could not be implemented immediately and required various steps and the allocation of resources to accomplish. *Id.* at 2-3.

While the jail worked toward implementing these remedies, the average daily population continued to rise in 2019. *Id.* at 3-5. In January 2019 the average daily population was 218.5; in February 2019 the average daily population was 232.1; in March 2019 the average daily population was 240.7; in April 2019 the average daily population was 232.4; in May 2019 the average daily population was 238.3; in June 2019 the average daily population was 247.3, at which point, the permanent bed capacity was considered to be exceeded at the facility; in July 2019 the average daily population was 260.0; in August 2019 the average daily population was 291.6; in September 2019 the average daily population as 285.6; in October 2019 the average daily population was 287.3; in November 2019 the average daily population was 272.3; and in December 2019 the average daily population was 254.7. *Id.* at 3-4.

During late 2019, while the remedies to reduce the jail population were being increasingly implemented, the average daily population at Marshall County Jail began to trend downward. *Id.* at 5. In January 2020 the average daily population was 249.7; in February 2020 the average daily population was 233.9; in March 2020 the average daily population was 210.9; in April 2020 the average daily population was 183.5; in May 2020 the average daily population was 151.6; in June 2020 the average daily population was 151.9; in July 2020 the average daily population was 151; and in August 2020 the average daily population was 161. *Id.* at 5-6. The Marshall County Jail population has remained below 230 since February 24, 2020. *Id.* at 6.

3

During the period of overcrowding at Marshall County Jail, jail officials made several temporary adjustments to the facility to house the surplus of inmates. In June 2019, Chief Jail Officer Holcomb started adding floor space bed assignments by placing one additional inmate in the four-person cells. ECF 26-2 at 2. Officer Holcomb determined adding an additional inmate to the four-person cells would be the safest option because those cells have the largest amount of floor space and the inmates would be secured during lockdown hours. *Id.* If an inmate was assigned to the floor in a four-person cell, he was given a mat he could place anywhere in the cell. *Id.* Most inmates placed the mat in the center floor space between the permanent bunks, which lessened the space available for the inmates in the bunks but did not entirely obstruct their path. *Id.* at 3. Moreover, inmates in the permanent bunks were free to get out of their beds at the head or foot, which eliminated the need to navigate around the inmate assigned to the floor space. *Id.* Inmates in general population were free to spend most hours of the day out of their cell in the dayroom. *Id.*

In the summer of 2019, Officer Holcomb created additional sleeping space by adding additional bunks in the inmate worker dorm style pod and turning the recreation room into a temporary housing unit. *Id.* at 4. In September 2019, Officer Holcomb ordered, received, and distributed additional portable bunks. *Id.* Because each pod contains the same number of dayroom seats as permanent bunks, the addition of one extra inmate in each four-person cell resulted in a shortage of dayroom seating. *Id.* As a result, when the dayroom had no available seats, the inmates were allowed to sit on their bunks, stand at the tables, or wait for a space to open up at one of the dayroom

tables to eat their meals. *Id.* No inmate was ever forced to sit on the floor or on the toilet to eat. *Id.*

<u>Davis's Incarceration at Marshall County Jail</u>

Davis was arrested and booked into Marshall County Jail on May 3, 2019, and released on December 30, 2020. *Id.* at 1. Beginning in May 2019, Davis was given a bunk assignment in a four-person cell in 1470 Pod. *Id.* at 5. A fifth inmate was assigned to Davis' cell around June 19, 2019. *Id.* Davis remained in a bunk assignment in 1470 Pod between May 6, 2019, and September 1, 2019. *Id.* On November 16, 2019, Davis was reassigned to 1440 Pod with a bunk assignment he kept through March 1, 2020, when the jail no longer was over capacity. *Id.*

## II.     ANALYSIS

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th

Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009). Summary judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Because Davis filed this action as a pretrial detainee, I must assess his claims under the Fourteenth Amendment instead of the Eighth Amendment. *See Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 856 (7th Cir. 2017). "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that amount to punishment." *Id.* (quotation marks omitted). "A pretrial condition can amount to punishment in two ways: first, if it is imposed for the purpose of punishment, or second, if the condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the government action is punishment." *Id.* A pretrial detainee can "prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473-74 (2015); *see also Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (extending *Kingsley's* objective inquiry to all Fourteenth Amendment conditions-of-confinement claims brought by pretrial detainees).

Davis argues the defendants violated his rights by placing a fifth inmate in the four-person cells, which made it "impossible" for him to leave his bed and forced him to eat on a toilet instead of a table. ECF 1 at 2. The defendants argue summary judgment should be granted in their favor because their efforts to address the overcrowding of the

6

jail were objectively reasonable in light of the surrounding circumstances. ECF 26 at 18-22. Specifically, they argue they reasonably accommodated all inmates while taking affirmative steps to reduce the jail population. *Id*. at 20-22.

Here, the jail's decision to place a fifth inmate in each four-person cell was rationally related to its objective of safely housing the surplus of inmates while the jail enacted large-scale remedies to reduce the jail population. *See Kingsley*, 135 S. Ct. at 2473. Davis offers no evidence the defendants' conduct was punitive, arbitrary, or purposeless. *See Mulvania*, 850 F.3d at 856. Moreover, Davis offers no evidence his housing arrangement made it "impossible" for him to get out of his bed, and the defendants provided attestations and photographs demonstrating the inmates still had room to maneuver in the four-person cells with the addition of the fifth bunk. ECF 26-2 at 8-15. Lastly, Davis offers no evidence he was forced to sit on the toilet to eat his meals, and the defendants attest Davis was not instructed or forced to sit on the toilet to eat his meals and was free to eat at his bunk, stand at a table, or wait for a space to open up at one of the dayroom tables to eat his meals. ECF 26-2 at 4. Thus, there is no evidence by which a reasonable jury could conclude the defendants violated Davis' Fourteenth Amendment rights by placing a fifth inmate in the four-person cells.

For these reasons, the court:

(1) GRANTS the defendants' summary judgment motion (ECF 25); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Travis Davis.

SO ORDERED.

ENTERED:  September 2, 2021.

                                                /s/   Philip P. Simon
                                                PHILIP P. SIMON, JUDGE
                                                UNITED STATES DISTRICT COURT